## The Ella B.

### The Russell Sage.

*(District Court, N. D. New York.   March, 1884.)*

1. NEGLIGENCE—SUDDEN EMERGENCY.

   One who, in the confusion of a sudden emergency caused by another's fault, fails to adopt the most prudent measures of safety, is not chargeable with negligence on that account.

2. SAME—COLLISION OF VESSELS.

   Accordingly, where a tug-boat was coming down the stream with a canal-boat in tow, and a steam-propeller, whose officers might easily have seen the tug, suddenly and without warning swung out into the stream, thus rendering a collision imminent, and the master of the tug endeavored to pass by in order to escape the danger, *held*, that even though some other course might have been in fact more prudent, the owner of the tug was not answerable for any part of the damage sustained by the canal-boat, when struck by the propeller.

In Admiralty.

*Benjamin H. Williams*, for libelants.

*Joseph V. Seaver*, for the Ella B.

*Josiah Cook*, for the Russell Sage.

COXE, J.   On the morning of June 12, 1883, the steam-propeller Russell Sage was lying in the Buffalo river at a dock on the north side near the foot of Washington street, her bow being headed up stream.   She is 233 feet in length, 33 feet beam, and has a carrying capacity of 1,500 tons.   Directly in front of her was a small, low scow, used in pile-driving, from 15 to 20 feet in width.   With this exception there was nothing to intercept the view for a thousand feet and more up the river, and as the scow was only half the width of the propeller the view from the starboard bow of the latter was ab-

solutely unobstructed. Diagonally opposite the Sage, and between 200 and 300 feet further up the stream, three boats, aggregating 63 feet in width, were lying abreast at French's dock. In these circumstances the Ella B., a small tug, 35 feet in length and 10 8-10 feet beam, having the canal-boat Henry L. Schutt in tow, started from a slip on the north side of the river, about a thousand feet above the point where the Sage was lying, and proceeded down the river, keeping very near the center. When the tug was 100 or 150 feet from the propeller the latter cast off her head lines and swung her bow into the stream. The tug put her wheel to starboard and opened her throttle-valve hoping to pass in safety. In this she was unsuccessful, for the propeller's stem struck the starboard bow of the canal-boat causing the damage for which this action is brought. The river t the point where the collision occurred is 221 feet wide. The witesses, with great unanimity, agree that at the time of the accident the tug and tow were about in the center of the river, rather nearer the south than the north side. It follows, therefore, that the propeller in order to have reached the canal-boat must have swung out 110 feet or more. The proof shows no fault on the part of the canal-boat. Indeed, it was virtually conceded on the argument that the libelants are entitled to recover, but each of the libeled vessels contended that the accident occurred solely by reason of the negligence of the other. The controversy is, then, between the Russell Sage and the Ella B., and the court is called upon to decide, if it is found that the accident was not the result of their joint negligence, which of the two was responsible therefor.

There can be no doubt as to the negligence of the Russell Sage. There was no difficulty in seeing the tug the moment she entered the river. The Sage knew, or ought to have known, that the tug, not a powerful one, was coming down the river with a loaded canal-boat, and yet, when they were in close proximity, she swung out so that her stem was nearly, if not quite, in the center of the stream. Had she waited a few moments the tug and tow would have passed by and all danger of collision would have been averted. She had no lookout, and the great weight of testimony is to the effect that she gave no signal. In any view it was unnecessary to swing out so far. Her object was to proceed further up the river, and had she adopted the usual course there would have been ample room between her bow and the center of the stream for the tug and tow to pass in safety. Without apparently taking any precaution to guard against danger, with an utter recklessness as to consequences, the Sage suddenly and unexpectedly let go her head-lines and swung herself half way across a narrow channel directly in the track of an approaching vessel. All this was negligence for which she must be held responsible.

Regarding the Ella B. there is more doubt. The impression entertained at the trial was that her conduct contributed to the accident, but upon a more deliberate and careful examination a different con-

clusion is reached.    In determining this question the previous habits of her master should not be considered, in the absence of proof connecting them with the collision or with some dereliction of duty on that occasion.    The tug was passing down the river in a careful and prudent manner.    No fault as to her rate of speed, her position in the center of the river, or the management of the tow is suggested until she was within about 150 feet from the propeller.    She then found herself confronted with sudden and imminent peril.    Three courses were open to her; she could reverse, and by going along-side, endeavor to stop the canal-boat; she could sheer off and attempt to haul the canal-boat to the south side of the stream, or she could do as she actually did, make an effort to pass.    Each of these courses was attended with danger.    The tow-line was about 16 feet or thereabouts in length.    In backing with so short a line it is not impossible that the boat might have been forced into a position even more hazardous than the one she actually assumed.    So, too, in sheering off, the canal-boat might have been so placed that she would have been struck amid-ships or near the stern where the blow would have been attended with far more serious results.    The tug attempted to go clear by turning towards the south and accelerating her speed. In deciding upon this course her master had a right to assume that the Sage would swing out only the usual distance, which is 40 or 50 feet.    He could not foresee, and was not required to do so, that the Sage would occupy half the channel in executing an ordinary maneuver.    It is not necessary to decide that he took the wisest and safest course, for the reason that he had not time or opportunity to enter into a nice calculation as to which of the dangers which confronted him was the least to be apprehended.    He was placed in a position of extreme peril by the sudden and extraordinary action of the Sage. If, in such an exigency, attended as it must have been with excitement and apprehension, he failed to give the most judicious orders or take the wisest course, the failure cannot be imputed to him, but to the vessel which placed him in this hazardous predicament.    The conclusion, therefore, reached is that the Sage is solely responsible for the accident.

There should be a decree for the libelants, with costs, and a reference to a commissioner to ascertain and report the amount of the damage sustained.    As against the Ella B. the libel must be dismissed, but without costs.